# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| VICKIE D. WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:17-cv-00168-JEO |
| | ) | |
| NANCY BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Vickie D. Wallace brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying the continuation of her disability benefits. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (*See* Doc. 8). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I. PROCEDURAL HISTORY

Plaintiff was determined on June 16, 2006, to be disabled beginning April 5, 2005, based on severe impairments of depression and status post left shoulder injury. (R. 26, 28, 141). The Social Security Administration sent Plaintiff for psychological and physical examinations in June and July 2012 (R. 375, 379) and concluded on October 2, 2012, that she was no longer disabled as of October 2012. (R. 138-39, 141). This determination was upheld on reconsideration after a disability hearing by a State agency Disability Hearing Officer. (R. 142-66).

Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 167, 238). An ALJ held hearings in May 2014 and June 2015 and issued a decision on June 18, 2015, finding Plaintiff's disability ended effective October 2012. (R. 23-70, 96-119). The Appeals Council denied Plaintiff's request for review on December 23, 2016. (R. 1-6). The Commissioner's final decision is ripe for judicial review. *See* 42 U.S.C. § 405(g).

# II. FACTS

Plaintiff was 46 years old at the time of the ALJ's decision. She previously obtained her Associate of Arts degree. (R. 114-15, 529). She has worked in the past as a receiving clerk, motel housekeeper, office cleaner, and assistant manager of a pizza shop and truck deli. (R. 42, 377). As noted above, she was previously

found to be disabled as of April 2005 based on the severe impairments of depression and status post left shoulder injury. (R. 28). Plaintiff now alleges that she is disabled due to her dislocated left shoulder, depression, panic attacks, type 2 diabetes, congestive heart failure, tinnitus, and arthritis in her hands. (R. 167, 238).

Following administrative hearings, the ALJ considered Plaintiff's disability claim in accordance with the eight-step sequential evaluation process to determine whether her disability had ceased.[2] (R. 26-43). The ALJ found that the June 16, 2006 decision[3] was the most recent decision finding Plaintiff disabled and was the decision to be used for comparison with the present evidence. (R. 28). The ALJ observed that, at the time of the comparison point decision ("CPD") –June 16, 2006–Plaintiff had impairments of a depressive disorder and a status post left shoulder injury, which resulted in marked limitations on her ability to perform basic work activities and an inability to perform even sedentary work or sustain a 40-hour workweek with adequate work attendance. (R. 28).

The ALJ also found that as of October 2012, Plaintiff had the residual functional capacity ("RFC") to perform a modified range of light work. (R. 37).

_____

[2]*See* 20 C.F.R. § 404.1594(f).

[3]The ALJ's opinion incorrectly references the date as June 6, 2006. (*Compare* R. 28 and R. 568).

Specifically, Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; sit and stand/walk a total of six hours each in an eight-hour workday; frequently reach in all directions, handle, finger, feel, and push/pull, bilaterally; and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (*Id*.) She could not, however, climb ladders, ropes, or scaffolds. (*Id*.) Plaintiff needed to avoid exposure to unprotected heights and moving or dangerous machinery, and she required an environment free of concentrated exposure to temperature extremes, wetness, humidity, noise, vibration, fumes, odors, gases, dust, and poor ventilation. (*Id*.)

The ALJ further found, based in part on the testimony of a vocational expert ("VE"), that Plaintiff could perform other work that exists in significant numbers in the national economy, including cashier, parking lot attendant, and toll collector. (R. 42, 62-63). Therefore, the ALJ determined that Plaintiff's disability ended in October 2012 and she has not become disabled since that date. (R. 43).

### III.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct.

1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

The regulations provide an eight-step sequential evaluation process for determining whether a claimant's disability continues. *See* 20 C.F.R. § 404.1594(f). The steps require an ALJ to determine:

(1) whether the claimant is engaged in substantial gainful activity;

5

(2) whether the claimant has an impairment or combination of impairments that meets or equals a listed impairment;

(3) whether there has been medical improvement;

(4) whether the medical improvement is related to the claimant's ability to work;

(5) whether an exception applies to a finding of no medical improvement or a finding that medical improvement is not related to the claimant's ability to work;

(6) whether the claimant's current impairments in combination are severe;

(7) whether, in light of the claimant's RFC based on her current impairments, she can perform past relevant work; and

(8) whether the claimant can perform other work, in light of her RFC and vocational factors.

20 C.F.R. § 404.1594(f)(1)-(8); *see also Martz v. Comm'r Soc. Sec.*, 649 F. App'x 948, 954 & n.4 (11th Cir. 2016); *Klaes v. Comm'r Soc. Sec.*, 499 F. App'x 895, 896 (11th Cir. 2012). "Medical improvement" is defined as any decrease in the severity of a claimant's impairments that were present at the time of the CPD as shown by signs, symptoms, and laboratory findings. *See* 20 C.F.R. § 404.1594(b)(1); *see also* 20 C.F.R. § 404.1528 (defining signs, symptoms, and laboratory findings) and *Klaes*, 499 F. App'x at 896 and *Simone v. Comm'r Soc. Sec.*, 465 F. App'x 905, 908 (11th Cir. 2012). Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the

impairment or impairments present at the time of the CPD and an increase in her functional capacity to do basic work activities. *See* 20 C.F.R. §§ 404.1594(b)(3)-(4), (c)(1)-(2); *see also Simone*, 465 F. App'x 909. In determining whether a claimant's disability continues, the ALJ does so on a "neutral basis without any initial inference as to the presence or absence of disability being drawn from the fact that [the claimant had] previously been determined to be disabled." 20 C.F.R. § 404.1594(b)(6). "The ALJ must 'actually compare' the previous and current medical evidence to show that an improvement occurred." *Klaes*, 499 F. App'x at 896 (citing *Freeman v. Heckler*, 739 F.2d 565, 566 (11th Cir. 1984)).

## V. DISCUSSION

Plaintiff argues that the ALJ's RFC findings lack any support from an examining physician. (Doc. 10 at 8-11). A claimant's RFC is the most she can still do despite her limitations and is based on all the relevant evidence in the case record, including her medical history, medical signs and laboratory findings, the effects of treatment, daily activities, medical opinions, and any medical source statements. 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *5 (S.S.A. 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (noting "the

task of determining a claimant's [RFC] and ability to work is within the province

of the ALJ, not of doctors").  In assessing the RFC of a claimant, the ALJ may ask

for additional opinions from medical experts.  *See* 20 C.F.R. § 404.1529(b).

In reviewing this issue, it is important to begin with the evidence supporting

the ALJ's determination that Plaintiff had medical improvements as of October

2012 and that she had an RFC increase concerning her shoulder impairment and

depression.[4]  With regard to Plaintiff's shoulder (upper extremities), the evidence

demonstrates largely unremarkable clinical findings and diagnostic testing.  (*See*

R. 28, 30-40, 332-36, 344-49, 352, 362-64, 383-87, 418-30, 432-54, 472-82,

486-97, 501-06, 509, 511, 512-13, 534-45, 548-59).  Plaintiff's activities, which

include sewing and doing arts and crafts, support the RFC assessment.  (R. 39,

255-56, 259-71, 378, 380-87).  Additionally, State agency medical consultant Dr.

Robert Heilpern opined in August 2012 that Plaintiff could perform a range of

light work, with limitations.[5]  (R. 41, 129-36).

With regard to the ALJ's determination that Plaintiff had no work-related

---

[4]This evidence is particularly important because it rebuts Plaintiff's challenge to the ALJ's decision to afford great weight to the non-examining reviewing physicians' opinions on her physical and mental conditions.  (Doc. 10 at 9).

[5]Dr. Heilpern also found that Plaintiff's allegations regarding her restrictions are partially credible.  (R. 134).  The ALJ noted that Dr. Heilpern's "opinions are consistent with and fully supported by objective findings on examining, results of imaging studies and laboratory tests, and the claimant's overall history and presentation."  (R. 41 (citing R. 129-36)).

mental limitations, the evidence demonstrates Plaintiff engaged in a broad range of activities of daily living, including driving, shopping, exercising, socializing, and doing crafts. (R. 29-30, 35, 39-41, 255-56, 259-60, 262-63, 267-71, 378, 381). Overall, she had positive responses to minimal mental health treatment. For instance, she learned to respond to her panic attacks using breathing techniques, working on projects, and listening to music. (R. 30-31, 35, 38, 58-59, 357, 359, 376, 495, 528, 550-53). She failed to complain about her alleged mental health symptoms during various medical visits. (R. 30-31, 503, 554-56). She had essentially unremarkable findings on mental status examinations. (R. 30-31, 35, 41, 377, 489-90, 528-31, 550-53). Other evidence demonstrates that Plaintiff's mental health symptoms were tied to situational factors, such as her boyfriend's heart surgery, her son's vehicle accident, and court appearances. (R. 30, 34-35, 38-39, 354, 359-60, 362, 378, 494-95). Additionally, psychological consultant Dr. Sally Gordon opined that Plaintiff could learn, remember, and complete work instructions and maintain relationships with coworkers and supervisors. (R. 35-36, 40, 378). Still further, State agency psychiatric consultant Dr. Lee Blackman opined that Plaintiff's mental impairments did not significantly limit her ability to perform mental work activities. (R. 40, 392-404). This medical and non-medical evidence constitutes substantial evidence supporting the ALJ's RFC

finding.  (R. 37).

The thrust of Plaintiff's arguments is that the ALJ gave inadequate weight to the consultative examinations conducted in August 2014 despite the fact that he requested them.  (Doc. 10 at 9).  As will be discussed further below, the court finds that the ALJ properly considered the consultative examinations and afforded them appropriate weight.

Concerning Plaintiff's physical condition, Dr. Timothy Parish evaluated Plaintiff in July 2012.  He diagnosed Plaintiff with (1) "Type I diabetes mellitus, poorly controlled, [with] associated peripheral neuropathy and chronic pain syndrome" and (2) "chronic cardiac failure, bilateral peripheral edema and decreased exercise tolerance."  (R. 387).  The ALJ afforded Dr. Parish's opinion that Plaintiff had chronic heart failure "little weight."  (R. 41).  In doing so, the ALJ noted that this diagnosis dated back to earlier care Plaintiff was receiving from Dr. Mark Richman that was "propagated" into Plaintiff's medical history when Dr. Wiley Livingston assumed her care.  (*Id*.)  The ALJ also found that Plaintiff's medical records from the pertinent period for the disability review show "no objective signs of [chronic heart failure] and no complaints from [Plaintiff] of [chronic heart failure]-related symptoms."  (*Id*.)  Additionally, the court notes that Dr. Parish's notes provide that Plaintiff's heart rate and rhythm were "regular"; her

heart sounds were normal; there were no "extra sounds or murmurs"; there was no peripheral edema; and all other indicators were normal. (R. 382). Accordingly, the ALJ was correct in affording little weight to Dr. Parish's opinion.

Dr. Sally Gordon did a psychological consultation of Plaintiff in June 2012. She opined Plaintiff (1) was able to learn, remember, and complete work instructions and maintain amicable relationships with coworkers and supervisors;[6] (2) could respond adaptively to "mild" work pressures and live independently with her "current level of support"; (3) had a normal level of intelligence and average reading and calculation skills; and (4) only transient symptoms related to her mental impairments. (R. 35-36, 40, 376-78). She also opined that Plaintiff was experiencing a bipolar disorder with her most recent episode being depression.[7] (R. 29, 378).

The ALJ gave great weight to Dr. Gordon's first opinion about Plaintiff's ability to learn, remember, and work. (R. 40). The ALJ specifically found that it was "consistent with the mental status results recorded in her report," the level of

---

[6]Dr. Gordon's first opinion was premised on her "medical issues aside." (R. 378). Elsewhere in the prognosis section, Dr. Gordon stated, "Per [Plaintiff's] report she was likely to have difficulty managing full time employment due to problems with fatigue, pain and episodic low blood sugar during which [time] she becomes increasingly unable to process simple information and perform otherwise automatic tasks (e.g. chew and swallow food, recognize her name and speak intelligibly) and may reach the point of passing out." (*Id*.)

[7]Dr. Gordon noted Plaintiff suffered from a panic disorder, but it was "well controlled with behavioral measures." (R. 378).

function described by third-party informants," and Plaintiff's self reports. (*Id*.)

The ALJ afforded little weight to Dr. Gordon's second opinion involving

Plaintiff's ability to respond to work pressures and live independently.

Specifically, the ALJ found these opinions to be internally inconsistent and

inconsistent with other evidence of record. (*Id*.) In support of this finding, the

ALJ stated, "Dr. Gordon appears to have credited [Plaintiff's] endorsement of

frequent hypoglycemic episodes during which she was unable to process even

simple information, chew, swallow, recognize her name, etc.; however, as noted,

[Plaintiff's] records fail to support those reports." (*Id*.) Additionally, State agency

psychiatric consultant Dr. Lee Blackman determined that the evidence fails to

establish any medically determinable bipolar disorder and that Plaintiff's mental

impairments cause no significant limitation in her ability to work. (R. 40, 392-

404). The ALJ noted that Dr. Blackman's opinions were consistent with other

mental health consultants.[8] (R. 40). The court agrees with the rationale articulated

---

[8]The ALJ stated as follows concerning Dr. Blackman's opinions:

As for other opinion evidence, the undersigned has accorded great weight to the
opinions of Lee Blackman, MD, the State agency psychiatric consultant, that the
evidence of record fails to establish medically determinable bipolar disorder and
that the claimant's affective and anxiety disorders cause no significant limitation
in her ability to perform mental work activities.... Dr. Richman is the only
treating or examining practitioner to make a diagnosis of bipolar disorder and he
made that diagnosis at the claimant's initial visit. The claimant denies any history
of manic symptoms, and her records fail to establish the diagnostic criteria for
bipolar disorder. Dr. Blackman's opinions regarding the severity and limitations

12

by the ALJ concerning the weight to be afforded Dr. Gordon's opinions. Plaintiff offers nothing at this juncture demonstrating that the ALJ's determination is unfounded. (*See* Doc. 10 at 8-11).

Dr. Sharon D. Waltz conducted a second psychological evaluation of Plaintiff in August 2014. Her diagnostic impressions include a diagnosis that Plaintiff had probable borderline intellectual functioning; that Plaintiff had a "mental impairment present to a moderate degree" and "a constriction of interests due to mental health problems"; and that Plaintiff "can function primarily independently with assistance and can manage benefits in her own best interests 'with assistance.'" (R. 29, 41, 530-31). The ALJ accorded little weight to Dr. Waltz's opinions because of internal inconsistencies and inconsistencies with other evidence of record. (R. 41). Specifically, the ALJ stated:

> It would appear that the examiner relied heavily on the claimant's self-reports rather than more objective evidence, including results of the mental status examination (MSE) she administered. Dr. Waltz characterized the claimant as having a mental impairment present to a moderate degree; however, results of her mental status examination were essentially unremarkable. The GAF of 62% she assigned is

associated with the claimant's medically determinable anxiety and affective disorders are consistent with the mental status evaluation results reflected in the reports of consultative psychological evaluations, with the claimant's history, with records from her current [primary care physician], and with her overall presentation.

(R. 40 (record citation omitted)).

13

indicative of only mild symptoms and is more consistent with the
MSE results she recorded than her characterization of moderate
mental impairment. Dr. Waltz opined that the claimant has
difficulties relating to others due to mental health symptoms and
moderate restrictions in terms of interacting appropriately with
supervisors and coworkers; however, both the claimant and her
third-party informants deny that she has any difficulty getting along
with others and report that she gets along well with authority figures.
The claimant has friends–including several close friends with whom
she socializes regularly. She has been able to maintain a long-term
relationship with her current boyfriend and remains close to her two
adult sons. Dr. Waltz opined that the claimant has constriction of
interests due to mental health problems. However, the claimant sews,
does arts and crafts, socializes with friends and family regularly, goes
out to eat with her boyfriend, listens to music, and watches television.
Finally, as discussed above, Dr. Waltz's opinion that the claimant can
function primarily independently with assistance and can manage
benefits in her own best interests "with assistance" is contradicted by
the claimant's history and self-reports.

(R. 41).

Plaintiff argues that there is nothing in Dr. Waltz's "findings that could be

inferred to relate only to borderline intellectual functioning rather than the Axis I

mental impairment of panic disorder." (Doc. 10 at 9-10). This court finds that the

ALJ properly weighed Dr. Waltz's opinions in light of the record evidence. The

ALJ is correct that Dr. Waltz's findings and conclusions are internally inconsistent

and inconsistent with the other evidence. By way of example, Dr. Waltz stated

that Plaintiff was "moderately impaired" in her ability to work. (R. 531). This is

not supported by Dr. Waltz's examination of Plaintiff, which is generally

unremarkable.[9]  (R. 529-31).  Additionally, Dr. Waltz commented that Plaintiff's mental health symptoms have led to a "constriction of interests and difficulties relating to others" and an ability to function independently "with assistance."  (*Id.*) This conclusion also is not supported by the record.  Plaintiff states that she "goes for walks"; fellowships; does "arts and crafts"; listens to music, sings, and sews; watches television; shops for food, clothes, and medication; does laundry; takes care of her pet; cooks meals; plays cards, visits with friends and family; and exercises.[10]  (R. 255, 259, 262-63, 267-71, 378, 381 & 530).

Dr. Hashim Hakim also conducted a neurological consult of Plaintiff in August 2014.  During this interview, Plaintiff complained of nerve damage from the knee down, restless leg syndrome, and seizures.  Specifically, Plaintiff stated that she had three seizures over the preceding three months.  (R. 511).  Following Plaintiff's examination, Dr. Hakim diagnosed her with diabetes mellitus, peripheral neuropathy related to her diabetes, seizures, congestive heart failure, and arthritis.  (R. 513).  His diagnosis of seizures was based on Plaintiff's self-

---

[9]One notable exception to this is that Plaintiff stated during the interview that she experienced "hallucinations that consisted of 'seeing spirits, like dead people,' 'but they don't bother [her].'  She reported these occur mostly at nighttime, but not when sleeping."  (R. 530).

[10]Plaintiff's driving situation during the relevant period is not particularly clear.  In a July 27, 2012 evaluation, she states she drives.  (R. 380-81).  In a second evaluation on August 4, 2014, she states she does not drive.  (R. 511).  In a third evaluation one day later, August 5, 2014, she  reports she occasionally drives, but her "motor skills are slow."  (R. 528-30).

reporting.  (*Id.*)  Plaintiff's imaging work-ups were negative for evidence as to any causation for the reported seizures.  (R. 511-13).  In Dr. Hakim's work-related activities statement, he indicated that Plaintiff could sit at one time without interruption for two hours, stand for one hour, and walk for one hour.  (R. 519). He also determined that in an 8-hour work day, Plaintiff could sit for four hours, stand for two hours, and walk for two hours.  (*Id.*)

Plaintiff argues that the ALJ did not properly weigh Dr. Hakim's opinions and did not include an opportunity for alternative sitting and standing in his RFC analysis to accommodate Dr. Hakim's restrictions.  (Doc. 10 at 9-10).  She also argues that the ALJ's determination with regard to her "total lifting and standing/walking capacities do not match the requirements for light work as defined, and the total sitting capacity of four hours ... does not even match the requirements for sedentary work (20 C.F.R. § 404.1567[11]; SSR 83-

---

[11]Section 404.1567 defines "sedentary" and "light" work as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with

10[12]).” (Doc. 10 at 10 (record citation omitted)).  Plaintiff concludes that the ALJ

could have resolved any doubts regarding her RFC by obtaining additional

medical expert opinions.  (*Id.* at 11).  The Commissioner responds that Plaintiff’s

speculation that further development of the record might have produced evidence

favorable to her is not enough to justify a remand of this case.  (Doc. 11 at 16-17).

The court agrees with the Commissioner.

The ALJ conducted a thorough analysis of Dr. Hakim’s opinions in

conjunction with the other evidence concerning Plaintiff’s situation.  The ALJ

stated as follows:

> The undersigned acknowledges that the medical source statement
> (MSS) Dr. Hakim completed in conjunction with his August 2014
> consultative neurological evaluation is somewhat more restrictive....
> In the MSS, Dr. Hakim opines that the claimant can stand/walk,
> combined, a total of four hours in an eight-hour workday rather than
> the six hours required for light work and that she can carry only 10
> pounds occasionally rather than the 20 pounds required for light work
> and is unable to carry even one pound frequently.  However, the
> neurologist provides no explanation for those limitations on the MSS

---

some pushing and pulling of arm or leg controls. To be considered capable of
performing a full or wide range of light work, you must have the ability to do
substantially all of these activities. If someone can do light work, we determine
that he or she can also do sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) & (b).

[12]SSR 83-10 provides that “the full range of light work requires standing or walking, off
and on, for a total of approximately 6 hours of an 8-hour workday.”  SSR 83-10 at 6 (1983 WL
31251 at 6).

form, and his examination produced no findings to support them. In terms of the upper extremity examination, Dr. Hakim found normal muscle tone, 5/5 upper extremity strength, and normal pinprick and thermal sensation. In fact, the only recorded abnormality was an absence of deep tendon reflexes (DTRs) in the claimant's biceps, triceps, and brachioradialis. The undersigned notes, however, that less than two weeks later, the claimant exhibited normal reflexes at a PCP visit.... Dr. Hakim's lower extremity findings were similar: normal muscle tone, 5/5 lower extremity strength with good hip extension and flexion, and normal sensation to pinprick and vibration. Proprioception was normal bilaterally as well. DTRs were again absent at the bilateral knees and ankles (and, again, present two weeks later). The claimant walked with a slightly wide-based gait but was able to bend and squat normally and could perform toe walking and heel walking without difficulty. Her tandem gait was unremarkable and Romberg's was negative. Overall, the findings on examination Dr. Hakim documents in his report of examination are consistent with the other evidence of record and are accorded more weight that his MSS responses.

(R. 40 (record citations omitted)). The ALJ also noted in his opinion that Plaintiff has documented diabetes mellitus with chronically poor blood sugar control. (R. 39). He also found that Plaintiff "is not always compliant in using diabetes medications as prescribed, in following a diabetic diet, or in returning for follow up as scheduled." (*Id*.) The ALJ further found that although Plaintiff "has developed a number of diabetes-related complications, most are mild or in an early stage and improve when she is compliant in following treatment protocols." (*Id*.) This finding is supported by the record, which fails to show any episodes of ketoacidosis or diabetes mellitus-related hospitalizations. Additionally, the ALJ

18

noted that the "record also fails to support [Plaintiff's] allegations of frequent falls or syncopal episodes due to hypoglycemia." (*Id.*) Instead, the ALJ found that "[t]he records do document evidence of peripheral neuropathy that is likely related to poor diabetes control and more symptomatic in the lower extremities than the upper extremities." (*Id.*) Therefore, the ALJ further found, "It is also reasonable that [Plaintiff] would experience some generalized weakness and fatigue when her blood sugar level is fluctuating." (*Id.*) The ALJ then concluded:

> While these conditions and associated limitations would likely preclude [Plaintiff's] ability to perform medium to heavy work activities on a regular and continuing basis, the medical evidence of record provides no contraindication to her ability to perform the requirements of light work activities, as defined at 20 CFR 404.l567(b), with the additional postural, manipulative, and environmental limitations set forth above.

(*Id.*)

Plaintiff has failed to show that the ALJ erred in not obtaining additional medical expert opinions related to her physical condition. The court finds that the ALJ did not express any doubts or concerns regarding the sufficiency of the evidence. To the contrary, the record demonstrates confidence in his findings based on the record. Plaintiff's conclusory argument that further development of the record might produce additional clarifying evidence is insufficient to warrant a remand of this case. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724

(11th Cir. 2014) (ALJ not required to order additional medical examination to develop a full and fair record where claimant did not produce evidence to support her alleged disability and existing evidence supported ALJ's findings); *Prince v. Comm'r, Soc. Sec. Admin*., 551 F. App'x 967, 972 (11th Cir. 2014) ("An ALJ is not required to seek the independent testimony of a medical expert where the record is sufficient to determine whether the claimant is disabled and additional medical expert testimony would be unnecessary." (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)). Additionally, Plaintiff has not shown that any purported evidentiary gaps resulted in unfairness or "clear prejudice" warranting a remand.[13] *Graham v. Apfel*, 129 F. 3d 1420, 1423 (11th Cir. 1997). Finally, Plaintiff has failed to prove that she is disabled. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating that "[t]he burden is upon the claimant to demonstrate the existence of a disability as defined by the Social Security Act" (citing *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984)).

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered

---

[13]To the extent Plaintiff argues that the ALJ erred in failing to obtain additional medical expert opinions concerning her mental condition and RFC, her argument is without merit for the reasons discussed in this paragraph.

separately.

      **DONE,** this the 19th day of March, 2018.

                        _____

                        **JOHN E. OTT**
                        Chief United States Magistrate Judge